UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES,

                                                    19-cr-467 (PKC)

                -against-

                                                    OPINION AND ORDER


JESUS MANUEL ROJAS,

                        Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

   Defendant Jesus Manuel Rojas filed a pro se motion for compassionate release

pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), and an emergency

supplemental motion for compassionate release.  (Doc 87; Doc 90.)  Rojas asserts that his

medical conditions, the COVID-19 pandemic, and his family's financial and emotional situation

warrant his release.  (Doc 87; Doc 90.)  The government opposes his application.  (Doc 99.)  For

the reasons described below, Rojas's motions will be denied.


LEGAL STANDARD

   Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant

who has exhausted all administrative remedies, a court "may reduce" the defendant's sentence if

it finds that "extraordinary and compelling circumstances warrant such a reduction."  See 18

U.S.C. § 3582(c)(1)(A)(i).  The court must also consider the factors set forth in 18 U.S.C.

§ 3553(a) "to the extent they are applicable" and must find that the reduction is "consistent with

the applicable policy statements issued by the Sentencing Commission."  18 U.S.C.

§ 3582(c)(1)(A).

The United States Sentencing Commission is required by statute to promulgate "general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [that] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t); United States v. Brooker, 976 F.3d 228, 232 (2d Cir. 2020).  The Sentencing Commission has promulgated Guideline § 1B1.13, which applies only to motions made by the BOP – not to motions brought by defendants.  Brooker, 976 F.3d at 232, 235-36; U.S.S.G. § 1B1.13.

Accordingly, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." Brooker, 976 F.3d at 236.  District courts have "broad discretion" when considering compassionate release motions brought by defendants and are free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them."  United States v. Amato, 48 F.4th 61, 65-66 (2d Cir. 2022); Brooker, 976 F.3d at 236-37.  "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... *alone* shall not be considered an extraordinary and compelling reason'" for sentence reduction.  Brooker, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis in original) (alteration in original).

Even upon a defendant's motion, however, district courts may still look to § 1B1.13 for guidance in exercising their discretion.  See, e.g., United States v. Rodriguez, No. 16-cr-07, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020); United States v. Burman, No. 16 Cr. 190, 2021 WL 681401, at *3, 5 (S.D.N.Y. Feb. 21, 2021).  Guideline § 1B1.13 states that a

court may reduce a defendant's term of imprisonment if it determines that (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community, and (3) the reduction is consistent with policy statement in § 1B1.13.  U.S.S.G. § 1B1.13.  Extraordinary and compelling reasons exist, for example, when the defendant is suffering from a "serious physical or medical condition" or "deteriorating physical . . . health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Id. n.1(A).

Under § 3582(c)(1)(A), extraordinary and compelling reasons are "necessary—but not sufficient—for a defendant to obtain relief."  United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021).  The court must also consider the applicable § 3553(a) factors, such as the nature and circumstances of the offense, the purposes of the punishment, and the Guideline sentencing range, before granting compassionate release.  In other words, the § 3553(a) factors are "an alternative and independent basis for denial of compassionate release."  Id. (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); see also United States v. Yancy et al., No. 20-4096-cr, 2022 WL 6585231, at *2 (2d Cir. Oct. 7, 2022) ("[T]he district court did not abuse its discretion in independently finding that the Section 3553(a) factors weighed against [the defendant's] release.").  Accordingly, a court may deny a defendant's motion "if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override . . . what would otherwise be extraordinary and compelling circumstances."  United States v. Israel, No. 05 CR 1039, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019).

DISCUSSION

Rojas was arrested in January 2019 and charged with one count of conspiracy to distribute and possess with intent to distribute more than 400 grams of fentanyl, in violation of 21 U.S.C. § 841(b)(1)(A).  (Doc 47 ¶ 2.)   The charge stemmed from Rojas's participation, alongside his co-defendant Gonzalez, in the sale of fentanyl.  (Doc 75 at 14.)

Rojas faced a mandatory minimum sentence of 120 months imprisonment.  (Doc 75 at 4.)  Because he qualified for the safety valve, his Guidelines range became 87 to 108 months imprisonment, a range of imprisonment to which Rojas stipulated in his plea agreement.  (Id.; Doc 47 ¶ 5(c)(i).)  Rojas pled guilty to the offense and was sentenced principally to 30 months' imprisonment, 57 months below the bottom end of the advisory Guidelines range.  (Doc 70 at 1-3; Doc 75 at 4, 15, 17).  Rojas is currently incarcerated at USP Lewisburg and is scheduled for release on March 22, 2023.[1]

Rojas has exhausted his administrative remedies. He filed a request for compassionate release with the Warden at FCI Lewisburg in July 2021; it was denied in August 2021.  (Doc 87 at 2.)  He then filed a motion for compassionate release pursuant to 18 U.S.C. § 3583(C)(1)(A) in September 2021, (Doc 87), and an emergency supplemental motion in January 2022, (Doc 90).

In support of his release, Rojas argues that his medical conditions, the risks posed to his health by the COVID-19 pandemic, and the difficulties facing his family during his absence render his early release "necessary and appropriate."  (Doc 90 at 2.)  The government responds that Rojas has not shown that his circumstances rise to the level of "extraordinary and compelling reasons" to grant compassionate release.

---

[1] See Find an inmate, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/index.jsp (last accessed October 26, 2022).

Rojas explains that he has "several serious medical conditions" that have recently deteriorated, namely, high BMI, high blood pressure and kidney disease.  (Doc 87 at 1; Doc 90 at 1.)  Based on the full set of medical records submitted by the government, as of June 2022, Rojas's BMI falls within the obese category.  (See Doc 99, Ex. B at 41.)[2]  He receives medication for high blood pressure, and the staff at the Lewisburg Medical Clinic have increased his dosage "to compensate for kidney related problems."  (Doc 90 at 1.)  His supplemental motion claimed he was "in dire need" of surgery for a collapsed kidney and that his previously scheduled surgeries were canceled four times due to the pandemic.  (Doc 90 at 1.)

Rojas further notes that his medical conditions increase the risk that he will contract COVID-19 and that he will suffer severe complications or death if infected.  (Doc 90 at 2.)  According to Rojas, the conditions at the Lewisburg facility have worsened, the prison does not follow CDC COVID-19 protocols, and there has been a "covid outbreak [that] has consumed the inmate population."  (Doc 87 at 1; Doc 90 at 1-2.)  His supplemental motion claims that "[o]ver 20% of the inmates have covid and the camp is on lockdown."  (Doc 90 at 2.)  Rojas asks for compassionate release to his home so that he can "social distance himself," since he is unable to effectively do so in prison. (Doc 87 at 1.)

The Court acknowledges that social distancing is understandably more difficult for Rojas in prison than it would be in his own home, such that he may be more likely to contract the virus than if he were released.  However, it also true that Rojas has received his COVID-19 vaccinations and booster, which "mitigates, though it does not reduce entirely, his risk of contracting" the virus.  (Doc 99 at 3, Ex. A at 40, Ex. B at 69); see United States v. Serrano, No. 15 Cr. 608-4, No. 20 Civ. 9887, 2022 WL 1443688, at *14 (S.D.N.Y. May 6, 2022).  And

---

[2] See also Defining Adult Overweight & Obesity, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/obesity/basics/adult-defining.html (last accessed October 26, 2022).

available data shows that as of October 26, 2022, there are only seven inmates and zero staff members at Lewisburg who are currently positive for COVID-19.[3]  The facility is currently operating at "Level 1," which means there are minimal modifications in place.[4]  Current data therefore does not support Rojas's claim that he is at an extraordinarily high risk of contracting the virus.  See Serrano, 2022 WL 1443699, at *14 (concluding that the danger the defendant faced from COVID-19, even accounting for his underlying medical condition, did not amount to an extraordinary and compelling reason for granting compassionate release where the prison had no positive cases among inmates and only four cases among staff at the time of the court's decision).

The Court also recognizes that individuals with obesity, high blood pressure or chronic kidney disease can be more likely to become seriously ill if they contract the virus.[5]  Rojas, who suffers from all three conditions, could therefore be at an elevated risk of serious complications or death if infected – but he would face this same elevated risk whether at liberty or imprisoned.  Therefore, this fact does not warrant his early release.

Compassionate release motions asserting similar medical- and pandemic-related circumstances within this Circuit have been found insufficient.  In United States v. Star, the Second Circuit affirmed the district court's denial of a motion for compassionate release where the defendant failed to show "that his prison had a significant problem with COVID-19" and where "the Government reported that there were no cases of infection at the time" of the

---

[3] COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed October 26, 2022).
[4] Id.; see also COVID-19 Modified Operations Plan & Matrix, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed October 26, 2022).
[5] People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (last updated Oct. 19, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; Kidney disease & COVID-19, Nat'l Kidney Found., https://www.kidney.org/coronavirus/kidney-disease-covid-19 (last accessed October 26, 2022); Obesity and COVID-19, Ctrs. for Disease Control & Prevention (last updated Sept. 27, 2022) https://www.cdc.gov/obesity/data/obesity-and-covid-19.html.

defendant's motion.  No. 20-1999(L), No. 20-2043(Con), 2022 WL 2165895, at *1 (2d Cir. June 16, 2022).  And in United States v. Gomez, the Second Circuit concluded that the denial of a compassionate release motion was proper where the defendant, who suffered from high blood pressure and obesity, which "generally increase an individual's vulnerability to severe illness from COVD-19," received two doses of the Moderna vaccine and there were no active cases among inmates or staff.  No. 21-2429 (L), 21-2430 (Con), 21-2646 (Con), 2022 WL 7772745, at *1 (2d Cir. Oct. 14, 2022).

Rojas also has not shown that his medical conditions, independent of the pandemic-related risk they pose, warrant his release.  The BOP has been treating Rojas's conditions, including by prescribing him high blood pressure medication, adjusting his dosage as needed, and arranging for his kidney surgery. (Doc 90 at 1; Doc 99 at 3).  Rojas's January 2022 supplemental motion stated that he was "in dire need of a surgery due to his kidney defect and disease," that he had a collapsed kidney, and that his surgery had been cancelled four times due to the pandemic.  (Doc 90 at 1.)   However, the medical records submitted by the government in September 2022 indicate that Rojas had the kidney surgery he needed in March 2022.  (See Doc 99 at 3, Ex. B at 2 ("Undergone recent left [percutaneous nephrolithonomy] for large left renal pelvis stone in a significantly malrotated left kidney. Stone free on [post-operative] CT [scan]."); id., Ex. B at 17 ("Inmate returned from outpatient surgery . . . .").)  His records also contain notes regarding the need for follow-up appointments and continued treatment for his high blood pressure and kidney disease.  (See, e.g., Doc 99 at 3, Ex. B at 2 ("Follow up in one year."); id., Ex. B at 4 (stating that medical staff "will aggressively treat [high blood pressure] to prevent further kidney damage" and that Rojas "has [a] follow up with urology and ophthalmology pending").)  The Court concludes Rojas has not shown that the medical care he has received

while incarcerated is inadequate. His medical conditions therefore do not give rise to "extraordinary and compelling reasons" that justify his early release.

       Further, Rojas claims he should be released because his family's financial and emotional wellbeing have suffered during his incarceration.  (Doc 90 at 2.)  In particular, his wife "struggles to pay bills" and his teenage daughter, who has autism, "has also struggled with the additional stress on her mother and the home" during Rojas's absence.  (Id.)  The Court acknowledges the very real challenges facing Rojas's family but concludes that such circumstances are not "extraordinary and compelling."  See United States v. Cargo, No. 21-395-cr, 2022 WL 244083, at *2 (2d Cir. Jan. 27, 2022) (affirming denial of compassionate release motion where seriousness of defendant's crimes outweighed the fact that his "family [was] struggling without his presence").

       Finally, Rojas's good behavior and employment during his incarceration, while encouraging and may be considered in the context of other factors, do not justify his release. (See Doc 87 at 1); see also United States v. Corin, No. S7 10 Cr. 391-64, 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020); United States v. Bennett, No. 15 Cr. 95, 2022 WL 3445349, at *3 (S.D.N.Y. Aug. 17, 2022); United States v. Salgado, No. 15-CR-681, 2022 WL 3043100, at *2 (S.D.N.Y. Aug. 2, 2022) (stating that rehabilitation and a "spotless disciplinary record" do not warrant sentence reduction because "[t]o find otherwise would convert the process for obtaining a compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reductions," contrary to Congress's intent); see also Brooker, 976 F.3d at 238 ("[R]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.").

Even if Rojas had shown extraordinary and compelling reasons to grant compassionate release, the factors set forth in § 3553(a) would nonetheless counsel against granting his motions.  Rojas's crime was a serious one.  At the time of his arrest, he was participating in the sale of one kilogram of fentanyl.  (Doc 75 at 14.)  He stipulated in his plea agreement to criminal responsibility for "approximately 5 kilograms of fentanyl."  (Doc 47 ¶5(a)(iii).)  Rojas told law enforcement he had been working with Gonzalez at the direction of others to distribute large quantities of the drug to various customers.  (Doc 75 at 14.)  The officers who arrested Rojas found six large quantities of fentanyl and heroin, as well as a large roll of plastic wrap consistent with drug paraphernalia, in his apartment – the apartment he lived in rent-free as superintendent of the building.  (Id. at 13-14.)  As this Court emphasized during Rojas's sentencing, "this is an enormous amount of a drug that kills people."  (Id. at 15.) Fentanyl, which is up to 50 times stronger than heroin and 100 times stronger than morphine, has played a devastating role in the opioid crisis that continues to plague this country.[6]  The CDC reports that "[o]ver 150 people die every day from overdoses related to synthetic opioids like fentanyl."[7]  This is the deadly reality Rojas took part in.  His actions cannot be so readily excused.

Despite the grave consequences associated with Rojas's crime, the Court took account of several countervailing factors at sentencing.  Rojas pled guilty, showed this Court he was sincerely remorseful, and stated that while he knew the packages contained controlled substances, he did not know they contained fentanyl.  (Doc 75 at 15-16.)  These considerations

---

[6] Fentanyl Facts, Ctrs. for Disease Control & Prevention, cdc.gov/stopoverdose/fentanyl/index.html (last accessed October 26, 2022).
[7] Id.

led the Court to impose a sentence nearly five years below the Guideline range – they do not now favor reducing his sentence even further.

   Releasing Rojas now would also undermine the deterrent effect of his sentence. Rojas himself may be sufficiently dissuaded from committing future crimes, but the Court is primarily concerned with the need to deter others from engaging in similar conduct. (See Doc 75 at 16-17.)  General deterrence was a significant consideration at the time of sentencing, and it remains imperative today.

   Rojas received the sentence that was, and continues to be, appropriate given the seriousness of his crime, the need for just punishment and the need to deter others from committing similar offenses.  The Court thus concludes that the applicable § 3553(a) factors serve as an independent basis for denying Rojas's motions.

   Finally, a court's decision to reduce a defendant's sentence must also be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  As noted above, Guideline § 1B1.13 is not applicable to motions brought by defendants but may guide the court in the exercise of its discretion.  A sentence reduction here would not be consistent with § 1B1.13.  The Court is optimistic that Rojas is not a danger to any other person or the community, but his medical conditions do not "substantially diminish[]" his ability to receive medical care within the prison environment.  As already noted, he had kidney surgery and is receiving medication for his high blood pressure.  Therefore, he has not shown "extraordinary and compelling reasons" consistent with § 1B1.13.

CONCLUSION

The Court has considered Rojas's medical conditions, the ongoing COVID-19 pandemic, Rojas's vaccination status, the manageable status of COVID-19 in the Lewisburg facility, and the medical treatment Rojas has received and can continue to receive while incarcerated.  Viewing all circumstances in combination and in isolation, and considering the § 3553(a) factors, the Court concludes that Rojas has not demonstrated "extraordinary and compelling" reasons to reduce his sentence that was 57 months below the low end of the advisory Guidelines range.  His motions are therefore DENIED.  The Clerk is directed to terminate the motions.  (Doc 87; 90.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 26, 2022

- 11 -